Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL HOENECKE,<br><br>    Plaintiff,<br><br>v.<br><br>CLEVELAND BIOLABS, INC., LEA VERNY, RANDY S. SALUCK, ALEXANDER ANDRYUSHECHKIN, DANIIL TALYANSKIY, ANNA EVDOKIMOVA, and IVAN FEDYUNIN,<br><br>    Defendants. | Case No:<br><br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Daniel Hoenecke ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.  This is an action against Cleveland BioLabs, Inc. ("Cleveland BioLabs" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17

1

C.F.R. § 240.14a-9, in connection with Cleveland BioLabs's proposed merger (the "Proposed Transaction") with Cytocom, Inc. ("Cytocom").

2. In connection with the Proposed Transaction, High Street Acquisition Corp. ("Merger Sub"), a direct, wholly owned subsidiary of Cleveland BioLabs, will merge with and into Cytocom, with Cytocom surviving as a wholly owned subsidiary of Cleveland BioLabs, and the surviving corporation of the merger. Upon completion of the Proposed Transaction, Cleveland BioLabs securityholders as of immediately prior to the merger are expected to own approximately 39% of the outstanding shares of the combined company on a fully diluted basis and former Cytocom securityholders are expected to own approximately 61% of the outstanding shares of the combined company on a fully diluted basis.

3. On February 16, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

4. The Registration Statement, which recommends that Cleveland BioLabs shareholders vote in favor of, among other things, the issuance of Cleveland BioLabs common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (1) Cleveland BioLabs's and Cytocom's financial projections; (2) the financial analyses performed by Cleveland BioLabs's special committee's[1] financial advisor, Cassel Salpeter & Co., LLC ("Cassel Salpeter"), in connection with its fairness opinion; (3) potential conflicts of interest involving Cassel Salpeter; (4) potential conflicts of interest involving Company insiders; and (5) the sales process leading up to the Proposed

---

[1] The Board created the special committee, consisting of Defendants Saluck and Talyanskiy, to consider and negotiate a potential transaction with Cytocom. *See* Registration Statement at 115.

Transaction.

5. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Stock Issuance proposal before the anticipated shareholder vote. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Stock Issuance.

## JURISDICTION AND VENUE

6. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

9. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

10. Plaintiff is, and has been at all relevant times hereto, an owner of Cleveland BioLabs common stock.

11. Defendant Cleveland BioLabs is a biopharmaceutical company that develops novel approaches to activate the immune system and address various medical needs in the United States and Russia. The Company is incorporated in Delaware. The Company's principal executive offices are located in New York. The Company's common stock trades on the NASDAQ under the ticker symbol, "CBLI."

12. Defendant Lea Verny ("Verny") is Chairman of the Board of the Company.

13. Defendant Randy S. Saluck ("Saluck") is a director of the Company.

14. Defendant Alexander Andryushechkin ("Andryushechkin") is a director of the Company.

15. Defendant Daniil Talyanskiy ("Talyanskiy") is a director of the Company.

16. Defendant Anna Evdokimova ("Evdokimova") is a director of the Company.

17. Defendant Ivan Fedyunin ("Fedyunin") is a director of the Company.

18. Defendants Verny, Saluck, Andryushechkin, Talyanskiy, Evdokimova, and Fedyunin are collectively referred to herein as the "Individual Defendants."

19. Defendants Cleveland BioLabs and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. On October 19, 2020, Cleveland BioLabs and Cytocom issued a press release announcing the Proposed Transaction, stating in pertinent part:

**Cytocom and Cleveland BioLabs Announce Definitive Merger Agreement**

Monday, October 19, 2020 4:05 PM

*Merger to create a single public company focused on the development and commercialization of immunotherapies for oncology, infectious disease, inflammation and auto-immune mediated conditions*

**WINTER PARK, FL and BUFFALO, NY / ACCESSWIRE / October 19, 2020** / Cytocom, Inc. (Cytocom), a leading biopharmaceutical company in the area of immune-modulation, and Cleveland BioLabs, Inc., (NASDAQ:CBLI), an innovative biopharmaceutical company developing novel approaches to activate the immune system, today announced that they have entered into a definitive merger agreement to combine their businesses in an all-stock transaction. Cytocom shareholders will have a majority position in the newly combined entity, which the parties anticipate will continue to be listed on the Nasdaq, and the initial Board of Directors for the combined company will consist of four members selected by Cytocom and three members selected by Cleveland BioLabs. The Boards of Directors of both companies have approved the combination.

Each party to the proposed merger believes that the combined company will create near-term commercial opportunities in numerous areas of significant unmet medical needs including acute radiation injury, oncology, infectious disease, inflammation and autoimmune-mediated conditions, with multiple commercial, regulatory and clinical milestones expected over the next 12 to 18 months. Operating as "Cytocom, Inc." and under the leadership of Cytocom's experienced management team, the combined company will be positioned for consistent growth.

**Overview**

Michael K. Handley, President and Chief Executive Officer of Cytocom, stated, "Our merger with Cleveland BioLabs and its subsequent immune-focused platform will be a transformative growth opportunity for Cytocom and Cleveland BioLabs shareholders. We believe that the combination of these highly complementary late-stage pipelines will strengthen our position and advance our efforts to unlock the potential of immune-modulating agents in the treatment of serious medical conditions. Further, this merger will enhance our ability to become a recognized leader in immune-modulating treatments and builds on the momentum created by our recent acquisition of ImQuest Life Sciences. We plan to utilize the combined platform to further drive value with additional clinical and commercial products and continue to seek strategic partnerships and acquisitions."

Dr. Andrei Gudkov, Chief Scientific Officer of Cleveland BioLabs, said: "This is an exciting day for Cleveland BioLabs and a great opportunity for our stockholders. The merger with Cytocom will allow us to add the strength of our science and bright perspectives associated with Entolimod development in cancer treatment and radiation defense arenas with a string of immunomodulators developed by Cytocom to form a powerful blend of conceptually and scientifically aligned products. We believe that the merger with Cytocom is the ideal way to unlock the value of our

technology platform and our lead drug candidate, Entolimod, and I look forward to seeing this exciting new therapy advance through the clinic."

**Conditions**

The proposed transaction is subject to customary closing conditions, including approval by the stockholders of Cleveland Biolabs, the shares of the combined company being approved for listing on Nasdaq and a registration statement under the Securities Act becoming effective. Cytocom and Cleveland Biolabs expect the transaction to close during the first quarter of 2021.

\* \* \*

**About Cytocom**

Cytocom, Inc. is a clinical-stage biopharmaceutical company developing novel immunotherapies targeting autoimmune, inflammatory, infectious diseases and cancers based on a proprietary platform designed to rebalance the body's immune system and restore homeostasis. Cytocom is developing therapies designed to elicit directly within patients a robust and durable response of antigen-specific killer T cells and antibodies, thereby activating essential immune defenses against autoimmune, inflammatory, infectious diseases, and cancers. Specifically, Cytocom has four programs in late-stage clinical development in Crohn's disease, Fibromyalgia, Multiple Sclerosis and Pancreatic Cancer. Cytocom believes that its technologies can meaningfully leverage the human immune system for prophylactic and therapeutic purposes by eliciting killer T cell response levels not achieved by other published immunotherapy approaches. Cytocom's immunomodulatory technology restores the balance between the cellular (Th1) and the humoral (Th2) immune systems. Immune balance is regulated through T-helper cells that produce cytokines. The Th1 lymphocytes help fight pathogens within cells like cancer and viruses through interferon-gamma and macrophages. The Th2 lymphocytes target external pathogens like cytotoxic parasites, allergens, toxins through the activation of B-cells and antibody production to effect to dendritic cells, which are natural activators of killer T cells, also known as cytotoxic T cells, or CD8+ T cells. Furthermore, the Cytocom technology antagonizes the Toll-like Receptors to inhibit pro-inflammatory cytokines. To learn more about Cytocom, Inc., please visit www.cytocom.com

**About Cleveland BioLabs**

Cleveland BioLabs, Inc. is an innovative biopharmaceutical company developing novel approaches to activate the immune system and address serious medical needs. Cleveland BioLabs' proprietary platform of Toll-like immune receptor activators addresses conditions such as radiation sickness and cancer treatment side effects. Cleveland Biolabs' most advanced product candidate, Entolimod is being developed as a medical radiation countermeasure for preventing death from acute

6

radiation syndrome and, through its joint venture with Everon Biosciences, LLC - Genome Protection, Inc. - for other anticancer and antiaging indications. Additionally, Cleveland BioLabs also conducts business in the Russian Federation through a joint venture with Joint Stock Company RUSNANO, Panacela Labs, Inc. Cleveland BioLabs maintains strategic relationships with the Cleveland Clinic and Roswell Park Cancer Institute. To learn more about Cleveland BioLabs, please visit http://www.cbiolabs.com.

### B. The Registration Statement Contains Materially False and Misleading Statements and Omissions

21.   The Registration Statement omits and/or misrepresents material information concerning: (1) Cleveland BioLabs's and Cytocom's financial projections; (2) the financial analyses performed by Cleveland BioLabs's special committee's financial advisor, Cassel Salpeter, in connection with its fairness opinion; (3) potential conflicts of interest involving Cassel Salpeter; (4) potential conflicts of interest involving Company insiders; and (5) the sales process leading up to the Proposed Transaction.

22.   The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Cleveland BioLabs Reasons for the Merger; (iii) Recommendation of Cleveland BioLabs' Board of Directors; and (iv) Opinion of the Financial Advisor to the Cleveland BioLabs Special Committee.

23.   Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, the Company's shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Cleveland BioLabs's and Cytocom's Financial Projections

24.   The Registration Statement fails to disclose information concerning Cleveland

BioLabs's and Cytocom's financial projections.

25. The Registration Statement provides that, in arriving at its fairness opinion, Cassel Salpeter reviewed and relied upon "information and data with respect to Cleveland BioLabs and Cytocom made available to Cassel Salpeter by Cleveland BioLabs and Cytocom, including financial projections with respect to the future financial performance of Cytocom . . . prepared by management of Cytocom, or the Projections[.]" *See* Registration Statement at 122-23. Additionally, Cassel Salpeter performed a risk-adjusted net present value analysis of Cytocom by utilizing the projected free cash flows of Cytocom through December 31, 2020. *Id*. at 125.

26. The Registration Statement, however, fails to disclose any of Cytocom's financial projections, including the cash flows, despite the fact that they not only exist, but were made available to Cassel Salpeter by Cleveland BioLabs and Cytocom and were relied upon by Cassel Salpeter in connection with its fairness opinion and related financial analyses. This information is material as Cleveland BioLabs shareholders are expected to own approximately 39% of the outstanding shares of the combined company, but without Cytocom's financial projections, Cleveland BioLabs shareholders cannot adequately evaluate and assess the value of Cytocom or the combined company.

27. Further, the Registration Statement fails to disclose the "information and data with respect to Cleveland BioLabs . . . [that was] made available to Cassel Salpeter by Cleveland BioLabs" as well as the "other internal financial information furnished to Cassel Salpeter by or on behalf of Cleveland BioLabs[.]" *See* Registration Statement at 122-23.

28. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses

8

performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Cassel Salpeter's Analyses

30. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Cassel Salpeter.

31. The Registration Statement fails to disclose the following concerning Cassel Salpeter's "*Risk-Adjusted Net Present Value Analysis*": (1) the risk-adjusted free cash flows of Cytocom, and all underlying line items; and (2) the individual inputs and assumptions underlying the (i) discount rates ranging from 33.00% to 37.00%, and of 58% to 62%, including an explanation as to why these discount rates are on the higher side, and (ii) terminal growth rates ranging from (2.00%) to 2.00%.

32. With respect to Cassel Salpeter's "*Selected Companies Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of each company Cassel Salpeter observed in its analysis.

33. The valuation methods, underlying assumptions, and key inputs used by Cassel Salpeter in rendering its purported fairness opinion must be fairly disclosed to Cleveland BioLabs shareholders. The description of Cassel Salpeter's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the

9

information described above, Cleveland BioLabs shareholders are unable to fully understand Cassel Salpeter's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Cassel Salpeter

34. The Registration Statement omits material information concerning potential conflicts of interest involving Cassel Salpeter.

35. The Registration Statement fails to disclose whether Cassel Salpeter has performed past services for Cleveland BioLabs, Cytocom, and/or their respective affiliates, and, if so, the timing and nature of the services, including the amount of compensation Cassel Salpeter received for providing each service within the past two years of the date of its fairness opinion.

36. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

37. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

38. The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

39. The Registration Statement provides the following concerning "*Director Positions*

*Following the Merger*":

### Director Positions Following the Merger

Lea Verny and Randy Saluck are each currently a non-employee director of Cleveland BioLabs and will continue as a director of the combined company after the effective time of the merger. Under the terms of the Merger Agreement, Cleveland BioLabs is entitled to designate three individuals to serve on the board of directors of the combined company. Accordingly, Cleveland BioLabs expects to designate one additional individual to serve on the board before the closing of the merger.

40. The Registration Statement, however, fails to sufficiently disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

41. The Registration Statement further fails to sufficiently disclose the extent to which Cytocom's proposals mentioned management retention or equity participation in the combined company.

42. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**5. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

44. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

11

45. The Registration Statement provides that, during the sales process, Cleveland BioLabs was engaged in discussions concerning potential strategic transactions with at least three counterparties, Company A, B, and C, who all performed due diligence on the Company during the sales process.

46. The Registration Statement, however, fails to disclose whether Cleveland BioLabs executed confidentiality and/or non-disclosure agreements with any counterparties during the sales process, including Company A, B, and C, and if so, the terms thereof, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

47. Without this information, Cleveland BioLabs shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Cleveland BioLabs shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

48. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified

above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

51. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

52. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Stock Issuance.

53. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

54. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

55. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions

as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

59. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Proposed Transaction and/or Stock Issuance. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 1, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
          zhalper@halpersadeh.com

*Counsel for Plaintiff*